No. 25.—WILLIAM C. OSBORN, plaintiff in error, vs. THE ORDINARY OF HARRIS COUNTY, for the use of Robert E. Huey and others, defendants in error.

[1.] In reference to partitions, the establishment of lost papers, the foreclosure of mortgages and the settlement of accounts and such like matters, the settled doctrine now is, that notwithstanding, by the English law, Chancery may have had concurrent and even exclusive jurisdiction, still, if a full and complete remedy has been provided here by Statute, Equity is ousted of its jurisdiction, unless a special case is made by the bill.

[2.] By the laws of this State, ample provision is made for actions at Law, on guardians, administrators and other trustee bonds; and to that forum parties must resort, unless they make a special case by the bill.

[3.] A resort to Equity is unnecessary to adjust the relative rights of sureties to a trustee bond, as by the Act of 1826 the sureties are allowed to come in at the trial and make special defence, and have their respective responsibilities ascertained and established.

In Equity, in Harris Superior Court. Decision on demurrer by Judge CRAWFORD, September Term, 1854.

This bill was filed by the wards of Alexander S. Huey, their former guardian and his sureties, (William C. Osborn and another) on his bond as guardian, praying an account, and alleging a breach of his bond in his failure to account.

The bill charged that Alexander S. Huey had removed from the State of Georgia and lived in Arkansas; that he was utterly insolvent, having wasted and converted to his own use all of their property; that before he left Georgia, he placed in the hands of each of his said sureties assets to an amount large enough to indemnify them from all loss, by reason of their sure-

tyship.   The bill prayed specific discovery from the sureties of the nature and amount of these assets, alleging inability to prove them otherwise.

To this bill William C. Osborn filed a general demurrer, which being over-ruled by the Court, he excepted and assigns error thereon.

WELBORN & CLARK, for plaintiff in error.

INGRAM & RAMSEY, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

According to the case made by the bill, had the complainants a complete remedy *at Law ?*

[1.] The rule now well settled in this State is, that in reference to partitions, the establishment of lost papers, the foreclosure of mortgages, the settlement of accounts, &c. that notwithstanding, by the English law, as adopted here, Chancery may have had concurrent or even exclusive jurisdiction over these or any other subject, still, if full redress has been provided by Statute, Equity, in that case, is ousted of its jurisdiction, unless a special case is made by the bill.

[2.] Now it is not denied, but that by the laws of this State, full provision is made for suits *at law,* on guardian's, administrator's and other trustee bonds.   To this *forum,* then, these parties must resort, unless they have brought themselves within the exception just stated.   Have they done so?   We have searched in vain for any statement to this effect.

The non-residence of the guardian does not confer jurisdiction.   So far as the question of jurisdiction is concerned, the residence or non-residence of the principal is wholly immaterial.   What special case, then, is made by the bill?   It is not suggested that there is any complication in the accounts of the guardian, which cannot be adjusted at Law.   No discovery, even, is sought of the non-resident guardian, who *pro forma* is made a party, and upon whom service is prayed to be perfect-

ed by publication. Neither is any appeal made to the consciences of the securities to make disclosures.

It is true that the bill alleges that the principal, when about to leave the State, placed in the hands of his securities some five thousand dollars, in money or property, " to indemnify and save *them* harmless." But the bill does not seek even to pursue this as a *trust fund*, set apart by the guardian for the discharge of his liability, nor is there any intimation that the securities are insolvent or any thing of that sort.

[3.] The only thing which seems to have been in the eye of the draftsman of the bill, which needed the aid of a Court of Equity, was the fact that this fund had been placed in the hands of the securities—the complainant not knowing the relative amount or portion received by each. Hence he asks for information upon that point, and insists, in the argument, that Equity, abhorring a multiplicity of suits, will entertain this bill, especially for the purpose of adjusting the rights of the several securities.

What has the complainant to do with this? who constituted him the *next friend* of the securities? The favor which he tenders is not only not solicited, but respectfully declined. And in our judgment, no Court has the right to thrust this boon upon the sureties *nolens volens*, willing or unwilling. They know best—how best—to protect themselves. Were it otherwise, and did this constitute a sufficient ground for the interposition of a Court of Equity, we are again met by the Act of 1826, which allows securities to come in and make special defence at the trial, and have a special verdict entered up, fixing their respective rights and responsibilities.

If one of the securities had received from their common principal funds to protect him against the whole or any part of his liability, that surety became a principal as to his co-sureties, *pro tanto.* And so, the verdict and judgment, under the Statute of 1826, would find and establish. And another surety paying the debt to the creditor, would be entitled to control the *fi. fa.* to re-imburse himself accordingly.

So then the last plank upon which this bill could stand, is knocked from under it.